Approved: _____
JIM LIGTENBERG
Assistant United States Attorney

Before:    THE HONORABLE LISA MARGARET SMITH
           United States Magistrate Judge
           Southern District of New York

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :    **COMPLAINT**

         - v. -                     :    Violations of
                                         18 U.S.C. §§
ROBERT COURTRIGHT,                  :    115(a)(1)(B),
                                         922(g)(8)
              Defendant.            :
                                         COUNTY OF OFFENSE:
                                         ORANGE

- - - - - - - - - - - - - - - - - - x

20 MJ 6464

SOUTHERN DISTRICT OF NEW YORK, ss.:

      RICHARD RISTEEN, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and charges as follows:

COUNT ONE

      1.  On or about November 10, 2019, November 26, 2019, and June 8, 2020, in the Southern District of New York, ROBERT COURTRIGHT, the defendant, knowing he was subject to a court order issued after a hearing of which he received actual notice, and at which he had an opportunity to participate, restraining him from harassing, stalking, and threatening an intimate partner and engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury, finding that he represents a credible threat to the physical safety of such intimate partner, and by its terms explicitly prohibiting the use, attempted use, or threatened use of physical force against such intimate partner that would reasonably be expected to cause bodily injury, knowingly possessed firearms, to wit, COURTRIGHT knowingly possessed a Savage Arms, Inc. Model 110 Engage Hunter XP 6.5 Creedmoor rifle with serial number N151607 on or about November 10, 2019 and June 8, 2020, and knowingly possessed a Savage Arms, Inc. B. Mag 17 Win. Super Magnum rifle

2

with serial number K327125 on or about November 26, 2019 and June 8, 2020, and the firearms were in and affecting commerce.

(Title 18, United States Code, Section 922(g)(8).)

COUNT TWO

2. On or about June 8, 2020, in the Southern District of New York, ROBERT COURTRIGHT, the defendant, did threaten to assault Federal law enforcement officers, to wit, ATF agents, with intent to retaliate against such agents on account of the performance of official duties, to wit, COURTRIGHT threatened to assault ATF agents in retaliation for their execution of a search warrant at his home.

(Title 18, United States Code, Section 115(a)(1)(B).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the ATF, where I have worked for approximately three years. This affidavit is based upon my personal participation in this investigation, my conversations with other law enforcement agents, and my examination of reports, records, and video footage. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my review of police records and my conversations with other law enforcement agents, I know that, in or about November 2012, following a hearing (which ROBERT COURTRIGHT, the defendant, received notice of and an opportunity to participate in), a New Jersey court issued an order finding that COURTRIGHT had committed an act of domestic violence against a former girlfriend and restraining him from assaulting, threatening, or stalking her. The order also found good cause to believe that COURTRIGHT poses a danger to his former girlfriend's life, health, or well-being. Based on my review of a NCIC report, I know that this order of protection is still in place.

3

5.    Based on my training and experience, I believe that, due to the existence of the order of protection, ROBERT COURTRIGHT, the defendant, is prohibited from possessing a firearm or ammunition under 18 U.S.C. § 922(g)(8).

6.    Based on my review of police reports and my conversations with other law enforcement agents, I know that, in or about October 2019, the wife of ROBERT COURTRIGHT, the defendant (the "Wife"), reported to police that COURTRIGHT had threatened her with a firearm and that he was at the home where they live together in Cuddebackville, New York (the "Residence").  Based on my review of property records, I know that COURTRIGHT and the Wife are listed as current residents of the Residence.

7.    Based on my review of police reports and my conversations with other law enforcement agents, I know that, on or about October 2, 2019, police officers approached ROBERT COURTRIGHT, the defendant, at the Residence and served him with an order requiring him to surrender any firearms.  COURTRIGHT was initially uncooperative, telling officers, in sum and substance, "you're not taking them" and "tell the judge she can kiss my ass."  He shut and locked the door of the Residence, and the officers called for backup.  Eventually, COURTRIGHT complied and the officers confiscated six firearms from the Residence.

8.    Based on my review of police reports and my conversations with other law enforcement agents, I know that, in or about October or November 2019, the Wife told law enforcement agents that she wanted all charges against ROBERT COURTRIGHT, the defendant, dropped, and she attempted to get back the six confiscated firearms, stating that they belong to her, not her husband.  Based on my review of ATF records, I know that the confiscated firearms were purchased by the Wife, not COURTRIGHT. When officers refused to turn over the guns, COURTRIGHT began calling the officers in an effort to get them back.  Based on my review of police reports and call recordings and my conversations with other law enforcement agents, I know that, in or about November 2019, COURTRIGHT talked to officers on the phone and demanded that the firearms be returned.  He was angry, vulgar, and belligerent. At one point, COURTRIGHT stated, in sum and substance, "I just want our fucking—I want my wife's guns back.  And I want them now."  (Based on my review of the recording, I believe that COURTRIGHT was about to call them "our" guns, before catching himself to say "my wife's guns.") With respect to whether the active restraining order prohibited

the return of the guns, COURTRIGHT stated, in sum and substance, "This fucking bullshit of, oh, well, there's a restraining order. Well if you can't convict somebody of a crime, you have no right to touch their goddam firearms in the first place." COURTRIGHT also said, in sum and substance, "You're violating my goddam rights," and he referred to "the store that we" (*i.e.*, his wife *and* him) bought a gun from. The officers refused to return the guns.

9. Based on my review of ATF records, I know that, on or about November 10, 2019, the Wife purchased a Savage Arms, Inc. Model 110 Engage Hunter XP 6.5 Creedmoor rifle with serial number N151607 and ammunition from Dick's Sporting Goods in Middletown, New York.

10. I have reviewed surveillance footage from the Dick's Sporting Goods store on November 10, 2019. That footage shows ROBERT COURTRIGHT, the defendant, and the Wife looking at guns together with a store employee. COURTRIGHT and the Wife both held some of the guns, though COURTRIGHT appeared to be more actively engaged in selecting and evaluating the guns. COURTRIGHT also looked through ammunition. The Wife then bought the same gun and ammunition that COURTRIGHT had looked at. Based on the above and on my training and experience, I believe that the Wife was making a straw purchase of the gun and ammunition on COURTRIGHT's behalf.

11. Based on my review of ATF records, I know that, on or about November 26, 2019, the Wife purchased a Savage Arms, Inc. B. Mag 17 Win. Super Magnum rifle with serial number K327125 and ammunition from Dick's Sporting Goods in Middletown, New York.

12. I have reviewed surveillance footage from the Dick's Sporting Goods store on November 26, 2019. That footage shows ROBERT COURTRIGHT, the defendant, and the Wife again looking at guns and ammunition together, as on November 10, 2019. Again, COURTRIGHT appeared to be more actively engaged in deciding which gun to buy, and—based on my training and experience—it appeared that COURTRIGHT was much more adept at handling guns than the Wife. COURTRIGHT and the Wife then left the gun section and the employee who was helping them. Later, after a shift change in the store, which resulted in a new employee staffing the gun section, the Wife returned to the gun section, with COURTRIGHT close by, and she purchased the same gun and ammunition that COURTRIGHT had appeared to pick out.

5

Based on the above and on my training and experience, I believe that the Wife was making a straw purchase of the gun and ammunition on COURTRIGHT's behalf.

13. Based on my review of police reports and my conversations with other law enforcement agents, I know that, on or about April 17, 2020, police responded to the Residence in response to a reported verbal argument between ROBERT COURTRIGHT, the defendant, and the Wife. Both COURTRIGHT and the Wife were on the front porch when officers arrived.

14. In or about early May 2020, law enforcement agents saw ROBERT COURTRIGHT, the defendant, driving one of the Courtrights' trucks, a Blue 2010 Toyota Tundra, just outside the Residence. COURTRIGHT was wearing hunting gear, suggesting that he may be transporting guns in the car for use in hunting.

15. Based, in part, on the above, on May 26, 2020, the Honorable Lisa Margaret Smith, United States Magistrate Judge, signed a warrant authorizing the ATF to search the Residence and the blue Tundra for firearms and ammunition illegally possessed by ROBERT COURTRIGHT, the defendant. Other ATF agents and I executed the warrant on or about June 8, 2020. Based on my participation in the searches and my conversations with other law enforcement agents, I know that, inside the Residence, agents found the Creedmoor rifle purchased by the Wife on or about November 10, 2019 (serial number N151607), the Super Magnum rifle purchased by the Wife on or about November 26, 2019 (serial number K327125), and another Savage Arms rifle. In addition, officers found a large amount of ammunition in the Residence, in the Toyota Tundra, and in another of the Courtrights' trucks (which the Wife gave the agents permission to search).

16. On or about June 8, 2020, following the execution of the search warrant, ROBERT COURTRIGHT, the defendant, stated to other ATF agents who conducted the searches, in sum and substance, that if they took his bow and arrows then he would come back and find them and they would not like what he would do to them, that they were lucky that they did not try to search his house while he was home because they would not be walking around, and that they did not get all of his guns anyway.

17. On or about June 8, 2020, following the execution of the search warrant, ROBERT COURTRIGHT, the defendant, made a number of phone calls to law enforcement officers to express his

                                6
dissatisfaction with the warrant and how it was executed.  Based
on my conversations with other law enforcement officers and my
review of an audio recording, I know that, during one of these
phone calls, on or about June 8, 2020, COURTRIGHT stated the
following, in sum and substance, to an Orange County Sheriff's
Office investigator:

        a.   In response to the investigator stating that
he just got off the phone with an ATF agent who conducted the
searches and that the ATF agent would provide a phone number for
COURTRIGHT to register his complaints, COURTRIGHT stated: "So
you did tell her that I'm taking a hundred fucking pounds of
fucking skin off her ass, right?" The investigator responded,
"No, I didn't tell her that."  COURTRIGHT stated, "Dude, it's
gonna happen."

        b.   COURTRIGHT said: "I can't take this
anymore, sir.  So from now on when an injustice is done to me
I'm gonna do an injustice back, plain and simple.  Plain and
fucking simple.  Because if it's fair for you guys it's fair for
me."  The investigator asked COURTRIGHT what he meant by that,
and COURTRIGHT replied, "Well, I guess I'll have to find out who
was at my house and I'm gonna go ransack their motherfucking
house then, huh?"

        c.   COURTRIGHT claimed that the agents locked
his dog in the attic, and stated, "You don't think somebody's
getting punched in the face for that?  Let me . . . . lock you
in a fucking attic . . ."

        d.   The investigator said, "I just don't want
you doing anything rash."  COURTRIGHT responded, "How is it
rash, sir?  It's not rash, this is clear as motherfucking day,
dude.  You can't keep putting your foot on somebody's throat and
one day tell them they're being rash."

        e.   The investigator explained that the agents
executing the search warrant recorded videos both before and
after the search, and COURTRIGHT replied, "Well, then they can
record me smashing them in the fucking face too.  Because that's
what's really gonna happen.  I'm not taking this shit no more."

        f.   The investigator stated, "I'm hoping this
whole scenario doesn't cause you to do anything that's gonna
cause harm to anybody, it's not worth it."  COURTRIGHT replied,
"Dude, at this point it's justified."

      g.    COURTRIGHT complained that the agents had surveilled him outside the Residence, and stated, "Well here's facts. Good goddam thing I didn't see somebody sitting there because they wouldn't be sitting there fucking—they'd be a permanent fucking fixture there. You don't have a right to violate my fucking rights. And to watch me like that? You're lucky I didn't fucking goddam know. Because I would have yanked a guy right out of his fucking car."

      h.    The investigator explained that he was in the process of getting COURTRIGHT a phone number, and COURTRIGHT complained about how long it was taking, and stated: "If I told you I was going to do something serious enough that it warranted it, you'd have cops here in fucking less than a fucking heartbeat." The investigator stated, "Well there's a significant difference if you're gonna pose an immediate threat to something." COURTRIGHT yelled, "No there's not dude, again, somebody violated my fucking rights and because there was a badge, there's nothing I can fucking do. Do you see why I'm gonna do my own?"

      i.    COURTRIGHT stated: "If somebody does not come to my house by the end of the day I'm taking this in my own fucking hands. I don't care where it goes. I don't care, sir. You're not gonna kick Courtright around no more."

      18.    Based on my conversations with other law enforcement officers and my review of an audio recording, I know that, during another phone call, also on or about June 8, 2020, ROBERT COURTRIGHT, the defendant, stated the following, in sum and substance, to an Orange County Sheriff's Office investigator:

      a.    COURTRIGHT complained about the agents who executed the warrant in his home, alleging property damage, and stated, "That's why I'm gonna break every fucking bone in their body. I know who they are. They can either come say sorry to me or I will have to fucking take this into my own hands."

      b.    COURTRIGHT stated: "Here's another thing that I can't wait to tell ATF. Because you can do whatever the fuck you want. Years ago when I had those problems with my other woman, when they gave those guns back, I have fucking bookoo guns in my fucking name. Are they in my possession right now? No. Good luck finding the friends and family who have them. But you'll never get them. Why? Because I did nothing wrong. So I don't need my wife. I've got thirteen of my own."

8

19. Based on my conversations with other law enforcement officers and my review of an audio recording, I know that, during another phone call, also on or about June 8, 2020, ROBERT COURTRIGHT, the defendant, stated the following, in sum and substance, to another ATF agent:

    a. COURTRIGHT said: "If one of your agents mis-fucking-handled my dog, I'm gonna mishandle them."

    b. The ATF agent asked COURTRIGHT, "Are you prohibited from possessing firearms and ammunition?" COURTRIGHT replied, "Through a bullshit restraining order that's not even legal."

    c. When COURTRIGHT complained about alleged property damage, the ATF agent noted, among other things, that the agents could have broken the car window, but did not, and COURTRIGHT replied, "Then I would have broke your face."

    d. COURTRIGHT again complained about alleged property damage in his home and stated, "So I'm telling you, I need this rectified, or I will figure out who did it and I'll rectify it my fucking self."

    e. The ATF agent explained that the agents executed the warrant in a manner designed to avoid the need to break down COURTRIGHT'S door early in the morning with guns and put him in handcuffs, and COURTRIGHT yelled, "I would have knocked you through my door."

    f. COURTRIGHT stated: "Maybe you might want to get to know somebody before you just come and take their life apart, because I'm coming to take your guyses."

20. Based on my training and experience, my conversations with other ATF agents, and my review of an ATF report prepared by an agent who examined the firearms recovered from the Residence, I know that the Creedmoor rifle with serial number N151607 and the Super Magnum rifle with serial number K327125 were manufactured outside the State of New York.

9

   WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of ROBERT COURTRIGHT, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
Special Agent Richard Risteen
Bureau of Alcohol, Tobacco, Firearms
and Explosives #6033 credentials confirmed

Sworn to before me this
19th day of June, 2020

sworn via FaceTime

*Lisa Margaret Smith*
_____
THE HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK